**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

PAUL MITCHELL,

                                    Plaintiff,

        v.                                                              No. 04-CV-366
                                                                            (LEK/DRH)
GLENN S. GOORD, JR., Commissioner, New
York State Correctional Service; THERESA
KNAPP-DAVID, Director of Classification and
Movement; JEFFREY TEDFORD, Deputy
Superintendent for Security, Clinton Correctional
Facility; L. DUQUETTE, Sergeant; D. LeCLAIR,
Correctional Officer; SAUNDERS, Correctional
Officer; TROOPER LaROCK, Correctional Officer;
CORRIGAN, Correctional Officer; DION,
Correctional Officer; ROY ANO, Corrections
Counselor; LEE; and JOHN DOE #1,

                                    Defendants.

_____

**APPEARANCES:**                        **OF COUNSEL:**

PAUL MITCHELL
Plaintiff Pro Se
42-60 Main Street
Suite 5-E
Queens, New York 11355

HON. ELIOT SPITZER                      CHARLES J. QUACKENBUSH, ESQ.
Attorney General for the                Assistant Attorney General
    State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER[1]**

Plaintiff pro se Paul Mitchell ("Mitchell"), formerly an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants, twelve DOCS employees, violated his constitutional rights under the First, Sixth, Eighth, and Fourteenth Amendments.  Compl. (Docket No. 1). Presently pending is defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56.  Docket No. 45.[2]  For the reasons which follow, it is recommended that defendants' motion be granted.  It is also recommended that the complaint be dismissed without prejudice as to the two unserved defendants.

**I.  Failure to Respond**

Mitchell has not oppose defendants' motion.  In an order dated May 8, 2006, Mitchell was warned that his failure to respond to defendants' motion by setting forth specific facts demonstrating a genuine issue of fact would result in this Court treating the facts asserted by defendants as true and that the motion might be granted absent a response from Mitchell. Docket No. 47.  Despite this notice, Mitchell has failed to respond to the motion.

"The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically."  Champion v. Artuz, 76 F.3d

---

[1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

[2] The motion is brought on behalf of all defendants except Corrigan and John Doe # 1, who have neither been served with process nor otherwise appeared in this action.  See Section V infra.

483, 486 (2d Cir. 1996).  Even in the absence of a response, defendants are entitled to

summary judgment only if the material facts demonstrate their entitlement to judgment as a

matter of law.  Id.; Fed. R. Civ. P. 56(c).  Because Mitchell has not responded to raise any

question of material fact, however, the facts as set forth in defendants' Rule 7.1 Statement of

Facts (Docket No. 45) are accepted as true.  Adirondack Cycle & Marine, Inc. v. American

Honda Motor Co., No. 00-CV-1619, 2002 WL 449757, at *1 (N.D.N.Y. Mar. 18, 2002)

(McAvoy, J.) (citing Lopez v. Reynolds, 998 F. Supp. 252, 256 (W.D.N.Y. 1997)).


## II. Background

At all relevant times, Mitchell was an inmate in the custody of Clinton Correctional

Facility ("Clinton").  After arriving at Clinton, Mitchell was admitted to Unit 14, the Special

Housing Unit ("SHU")[3] at Clinton.  Compl. at ¶ 18.[4]  While in Unit 14, Mitchell complained of

the living conditions and filed grievances alleging, inter alia, that the mentally ill inmates in

the unit screamed and sang at all hours and that the unit was infested with vermin, insects,

rats, and mice.  See Compl. at ¶¶ 22-23; see also Eagen Decl. (Docket No. 45) at Exs. C-1,

C-2.  The grievances were denied.  See Eagen Decl. at Exs. C-1, C-2.

_____

[3] SHUs exist in all maximum and certain medium security facilities.  The units "consist of single-occupancy cells grouped so as to provide separation from the general population . . . ."  N.Y. Comp. Codes R. & Regs. tit. 7, § 300.2(b) (1995).  Inmates are confined in a SHU as discipline, pending resolution of misconduct charges, for administrative or security reasons, or in other circumstances as required.  Id. at pt. 301.

[4] Under Fed. R. Civ. P. 56(e), the non-moving party must offer evidence in sworn affidavits to oppose a properly supported motion for summary judgment.  A verified complaint meets this requirement.  See Ford v. Wilson, 90 F.3d 245, 246 (7th Cir. 1996); King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994).  The complaint here was verified, see Compl. at 15, and will, therefore, be considered on this motion.

On February 19, 2004, Mitchell sought medical treatment for tendon problems in both his legs.  Compl. at ¶¶ 24, 41-42.  Mitchell requested that he be given a medical pass so that he did not have to climb steps, special boots to alleviate the pain caused by his condition, and a different painkiller.  Id. at ¶¶ 41-42.  These requests were denied.  Id.  In response, Mitchell filed a grievance alleging denial of proper medical care.  See Eagen Decl. at Ex. C-4. This grievance was also denied.  Id.  Mitchell also complained that on several occasions, Clinton staff denied him a proper kosher diet.  Compl. at ¶¶ 25-26, 43-71.  On March 15, 2004, Mitchell filed a grievance alleging, inter alia, that the plastic wrap had been taken off his kosher meals outside his presence and he was denied boiling water to prepare his oatmeal in accordance with his kosher diet requirements.  Eagen Decl. at Ex. C-3.  This grievance was also denied.  Id.  This action followed.

### III. Discussion

Mitchell asserts three causes of action in his complaint, each against all defendants. The first alleges that defendants retaliated against him for filing grievances, the second that defendants were deliberately indifferent to his serious medical needs, and the third that defendants deprived him of his kosher diet.  Compl. at ¶¶ 78-83.  Defendants seek judgment on all claims.

4

**A. Legal Standard**

A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Facts are material if they may affect the outcome of the case as determined by substantive law.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).  When, as here, a party seeks summary judgment against a pro se litigant, a court must afford the non-movant special solicitude.  Id.[5]  However, the mere existence of some alleged factual dispute between the

---

[5] Nevertheless, Mitchell does have substantial experience as a pro se litigant having filed at least ten other federal action since 1998.  See U.S. Party/Case Index (visited Sept. 17, 2006) <http://pacer.uspci.uscourts.gov/cgi-bin/dquery.pl>.

5

parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.  Anderson, 477 U.S. at 247-48.

## B. Personal Involvement

Defendants contend that Mitchell cannot demonstrate the personal involvement of any of the defendants.

"'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'"  Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)).  The doctrine of respondeat superior is not a substitute for personal involvement.  Polk County v. Dodson, 454 U.S. 312, 325 (1981).  Thus, supervisory officials may not be held liable merely because they held a position of authority.  Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996).  Supervisory personnel may be considered "personally involved," however, if they participated in the conspiracy, learned of the violation but failed to remedy the wrong, created a policy or custom under which unconstitutional practices occurred or allowed such policy or custom to continue, or were grossly negligent in managing subordinates who caused the violation.  Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986) (citations omitted).

### 1. Dion, Duquette, Hunt, LeClair, LaRock, Ano, Saunders, and Tedford

Defendants contend that Mitchell fails to demonstrate the personal involvement of Dion, Duquette, Hunt, LeClair, LaRock, Ano, Saunders, and Tedford.  However, viewing the

contested facts in the light most favorable to Mitchell, and in light of Mitchell's pro se status, he has sufficiently alleged the personal involvement of these defendants.  See Compl. at ¶¶ 49-51 (Dion), 66-71 (Duquette), 59-64 (Hunt), 54-56 (LeClair); 49-51 (LaRock), 74-75 (Ano), 44-48 (Saunders), 29-30 (Tedford).

Therefore, it is recommended that defendants' motion for summary judgment on this ground be denied as to Dion, Duquette, Hunt, LeClair, LaRock, Ano, Saunders, and Tedford.

### 2. Goord and Knapp-David

Mitchell fails to establish the personal involvement of Goord, the Commissioner of DOCS, and Knapp-David, the Director of Classification and Movement for DOCS.

In his complaint, Mitchell's only allegations as to the personal involvement of Goord and Knapp-David are that Mitchell wrote each of them a letter documenting the violations of Mitchell's rights.  Compl. at ¶¶ 72-73.  However, "receiving a letter from an inmate does not constitute sufficient personal involvement to generate supervisory liability." Petty v. Goord, No. 00 Civ.803(MBM), 2002 WL 31458240 at *8 (S.D.N.Y. Nov. 4, 2002).  Further, there is no evidence that Goord or Knapp-David participated here in the alleged violations or created a policy which allowed constitutional violations to continue.

Therefore, it is recommended that defendants' motion for summary judgment as to Goord and Knapp-David be granted on this ground.

7

**3. Dr. Lee**

Defendants contend that Mitchell fails to demonstrate the personal involvement of Dr. Lee.  In his complaint, Mitchell alleged that Dr. Lee "refused to issue a medical order preventing [Mitchell] from climbing steps and also refused to give [Mitchell] a painkiller that he was taking at . . . three prior facilities."  Compl. at ¶ 42.  Thus, viewed in the light most favorable to Mitchell as the non-moving party, Mitchell has sufficiently alleged Dr. Lee's personal involvement.

Therefore, it is recommended that defendants' motion for summary judgment on this ground be denied as to Dr. Lee.

**C. Eighth Amendment**

**1. Medical Treatment**

In his second cause of action, Mitchell contends that defendants forced him "to climb steps [and] . . . den[ied] him medical treatment and footwear for his documented tendon problems."  Compl. at ¶ 81.  Defendants contend that this claim is without merit.

A prisoner advancing an Eighth Amendment claim for denial of medical care must allege and prove deliberate indifference to a serious medical need.  Wilson v. Seiter, 501 U.S. 294, 297 (1991); Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994).  More than negligence is required "but less than conduct undertaken for the very purpose of causing harm."  Hathaway, 37 F.3d at 66.  The test for a § 1983 claim is twofold.  First, the prisoner must show that there was a sufficiently serious medical need.  Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998).  Second, the prisoner must show that the prison official

8

demonstrated deliberate indifference by having knowledge of the risk and failing to take measures to avoid the harm.  Id.  "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."  Farmer v. Brennan, 511 U.S. 825, 844 (1994).

A serious medical need is "'one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'"  Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995) (quoting Johnson v. Busby, 953 F.2d 349, 351 (8th Cir. 1991)).  An impairment that a reasonable doctor or patient would find important and worthy to treat, a medical condition that affects the daily activities of an individual, or the existence of chronic and substantial pain are all factors that are relevant in the consideration of whether a medical condition was serious.  Chance, 143 F.3d at 702-03.

Deliberate indifference requires the prisoner to prove that the prison official knew of and disregarded the prisoner's serious medical needs.  Id. at 702.  Mere disagreement over proper treatment does not create a constitutional claim as long as the treatment was adequate.  Id. at 703.  Allegations of negligence or malpractice do not constitute deliberate indifference unless the malpractice involved culpable recklessness.  Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996).

Mitchell contends that he suffered from foot drop, a condition involving his Achilles tendons.  See Compl. at ¶¶ 24, 41; Mitchell Dep. (Docket No. 45, Quackenbush Decl., App. A) at 16.  As a result of this condition, Mitchell contends that he suffered from "[c]ontinuous

pain, difficulty walking up and down steps," and difficulty with his back.  Mitchell Dep. at 19;

see also Compl. at ¶ 41.  However, Mitchell does not argue that his condition rendered him

immobile.  In fact, Mitchell concedes that he was able to ambulate despite his injury.  See

Mitchell Dep. at 20 (stating that he climbed stairs anytime he went to recreation or to the

infirmary); see also Moody v. Pickles, No. Civ. 03-850(DEP), 2006 WL 2645124, at *6

(N.D.N.Y. Sept. 13, 2006) (Peebles, M.J.) (holding that although plaintiff's knee injury caused

him pain, he was not rendered immobile and thus failed to demonstrate a serious physical

injury).   Although Mitchell contends that "[i]t is documented in his medical file that he is not

supposed to walk up and down steps and that he is supposed to have special boots,"

Mitchell provides no medical evidence to support these claims.  Compl. at ¶ 24 (emphasis in

original).  Thus, Mitchell has failed to raise a material issue of fact as to whether his condition

constituted a serious medical need.

Therefore, it is recommended that defendants' motion for summary judgment on this

ground be granted as to the second cause of action.[6]

---

[6] It is, of course, unnecessary to address the second prong of Mitchell's claim here where he has failed to meet the first.  However, it is worth noting that on this record, plaintiff would be able to raise a material issue of fact as to defendants' deliberate indifference.  Mitchell alleges that Dr. Lee refused to issue a medical order excusing him from climbing steps and refused to give him a painkiller he received at three previous correctional facilities.  See Compl. at ¶ 42.  Mitchell contends that in response to these requests, Dr. Lee stated "that if [Mitchell] was 'out in the street' it could be done for him but since he incarcerated it cannot."  Id.

**2. Conditions of Confinement**

Liberally construed, Mitchell's complaint alleges that his conditions of confinement constituted cruel and unusual punishment.  Defendants contend that these claims are without merit.

In order to prove that a prison condition amounted to cruel and unusual punishment, a plaintiff must satisfy both an objective and a subjective standard.  Jolly v. Coughlin, 76 F.3d 468, 480 (2d Cir. 1996). To satisfy the objective test, a plaintiff must show that the conditions of his confinement resulted "'in unquestioned and serious deprivations of basic human needs.'"  Anderson v. Coughlin, 757 F.2d 33, 35 (2d Cir. 1985) (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).  To satisfy the subjective test, a plaintiff must show that the defendants were deliberately indifferent to plaintiff's health or safety.  See Jolly, 76 F.3d at 480.

Here, Mitchell contends that he was housed in filthy and inhumane conditions with infestation by vermin, insects, rats, and mice.  See Compl. at ¶ 23.  Mitchell also contends that he was housed with mentally ill inmates who screamed and sang at all hours and threw urine and feces on the staff, other inmates, and on the tiers.  See id. at ¶ 22.  On February 3, 2004, Mitchell filed a grievance regarding these conditions.  However, it was concluded that Mitchell had failed to substantiate his claim that inmates were being housed in dangerous and unhealthy conditions,  "appropriate schedules are maintained in the unit," and "the facility does utilize extermination measures in order to control pests."  Eagen Decl. at Ex. C-1.  Further, Mitchell has failed to show how he was actually harmed by these conditions, much less that defendants were deliberately indifferent to his health or safety.  See Govan v.

11

Campbell, 289 F. Supp. 2d 289, 296-97 (N.D.N.Y. 2003) (Sharpe, M.J.) (holding that cockroach problems and wild birds flying in the cells did not constitute constitutional violations).  Thus, Mitchell has failed to show either the objective or subjective standard needed to prove a claim for cruel and unusual prison conditions.

Therefore, it is recommended that defendants' motion for summary judgment on this ground be granted.


## D. First Amendment

### 1. Retaliation

In his first cause of action, Mitchell contends that defendants confined him in "flithy and inhumane conditions," denied him Kosher meals, and refused to allow him to participate in various prison programs in retaliation for filing lawsuits and grievances against defendants. Compl. at ¶¶ 71, 77, 79.  Defendants contend that this claim is without merit.

To prevail on a retaliation claim, a plaintiff must first assert that the plaintiff's conduct was constitutionally protected and that this conduct was a "substantial factor" that caused the adverse action against plaintiff.  Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977).  The burden then shifts to the defendant to show that by a preponderance of the evidence, the adverse action would have resulted even in the absence of the protected conduct.  Id.; see also Dawes v. Walker, 239 F.3d 489, 492 (2d. Cir. 2001), overruled on other grounds, Swierkiewicz v. Sorema, 534 U.S. 506 (2002).  Retaliation claims are actionable because the conduct may tend to chill an individual's exercise of constitutional

rights. <u>Dawes</u>, 239 F.3d at 491.  However, courts must view retaliation claims with care and skepticism to avoid judicial intrusion into prison administration matters. <u>Id.</u>

Here,  Mitchell's filing of lawsuits and grievances were clearly assertions of a constitutional right and his alleged confinement in filthy and inhumane conditions and his denial of a proper kosher diet could constitute adverse action.  <u>See</u> <u>Graham v. Henderson</u>, 89 F.3d 75, 80 (2d Cir. 1996); <u>see</u> <u>also</u> <u>Pell v. Procunier</u>, 417 U.S. 817, 822 (1974). However, Mitchell alleges in only bare, conclusory terms that these alleged acts were taken in retaliation for his protected conduct.  Thus, Mitchell has not alleged specific facts that "give rise to a colorable suspicion of retaliation." <u>Flaherty v. Coughlin</u>, 713 F.2d 10, 13 (2d Cir. 1983); <u>see</u> <u>also</u> <u>Bennett v. Goord</u>, 343 F.3d 133, 137 (2d Cir. 2003).

Therefore, it is recommended that defendants' motion for summary judgment on this ground be granted.

### 2. Free Exercise of Religion

In his third cause of action, Mitchell contends that defendants denial of certain kosher foods and beverages deprived him of his free exercise of religion.  Defendants contend that this claim is without merit.

"[I]nmate[s] retain those First Amendment rights that are not inconsistent with [their] status as a prisoner." <u>Pell v. Procunier</u>, 417 U.S. 817, 822 (1974).  Thus, subject to reasonable prison regulations, inmates retain the protection of the Free Exercise Clause in the First Amendment.  <u>See</u> <u>id.</u>  In order to demonstrate a free exercise claim, a plaintiff must show that the defendants "significantly interfered" with his or her religious beliefs. <u>McEachin</u>

v. McGuinnis, 357 F.3d 197, 203 (2d Cir. 2004); see also Jones v. Goord, 435 F. Supp. 2d

221, 256 (S.D.N.Y. 2006).  It is well established that "an inmate is . . . entitled to a

reasonable accommodation of his religious beliefs," including "'a diet consistent with his

religious scruples.'"   Jackson v. Mann, 196 F.3d 316, 320 (2d Cir. 1999) (citing Kahane v.

Carlson, 527 F.2d 492, 495 (2d Cir.1975) and Bass v. Coughlin, 976 F.2d 98, 99 (2d Cir.

1992)).  Thus, all that is required for a prison diet not to burden an inmate's free exercise of

religion is "the provision of a diet sufficient to sustain the prisoner in good health without

violating [his religion's] dietary laws."  Kahane, 527 F.2d at 496.

Here, it is undisputed that Mitchell is Jewish.  See Compl. at ¶ 25; Defs. Mem. of Law

(Docket No. 45) at 20.  Mitchell contends under oath that "several times a week," as well as

on specific occasions, he did not receive boiling water with his kosher meals, the means by

which he prepared some kosher food and beverages.  Compl. at ¶ 26.  Mitchell also

contends that on one occasion his food was improperly unsealed prior to his consumption in

violation of the laws of his faith.  Compl. at ¶¶ 25, 43-48.  Defendants contend that Mitchell's

entire free exercise claim is based on four isolated events.  Defs. Mem. of Law at 20.

However, although in dicta, the Second Circuit stated that "courts [including those in the

Second Circuit] have generally found that to deny prison inmates the provision of food that

satisfies the dictates of their faith does unconstitutionally burden their free exercise rights."

McEachin, 357 F.3d at 203.  Thus, on this record, material issues of fact remain as to

whether the defendants significantly interfered with Mitchell's religious beliefs when on at

least four occasions, and possibly several times a week, they failed to provide him with meals

that met the requirements of a kosher diet.

Therefore, it is recommended that defendants' motion for summary judgment on this ground be denied.

## E. Qualified Immunity

Defendants also contend that they are entitled to qualified immunity.  Qualified immunity generally protects governmental officials from civil liability insofar as their conduct does not violate clearly established constitutional law of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229-30 (N.D.N.Y. 2002) (McAvoy, J.), aff'd, 80 Fed.Appx. 146 (2d Cir. Nov. 10, 2003). A court must first determine that if plaintiff's allegations are accepted as true, there would be a constitutional violation. Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights were clearly established at the time of the alleged violation. Aiken, 236 F. Supp. 2d at 230.  Here, the second prong of the inquiry need not be reached as to the first and second causes of action because, as discussed supra, accepting all of Mitchell's allegations as true, he has not shown that defendants violated his constitutional rights.  However, as to Mitchell's third cause of action, it was well established that on the dates that Mitchell was denied his kosher meals, prison officials had to provide inmates with "a diet that is consistent with his [or her] religious scruples."  Bass, 976 F.2d at 99.

Therefore, it is recommended that defendants' motion for summary judgment on this alternative ground be granted as to the first and second cause of action and denied as to the third cause of action.

15

## F. Exhaustion

Defendants contend that before Mitchell commenced this action on April 1, 2004, four of his grievances relating to his second and third causes of action were not properly exhausted.  See Compl. at 1.[7]

The Prison Litigation Reform Act of 1995 ("PLRA"), Pub. L. No. 104-134, 803(d), 110 Stat. 1321-66, 71 (1996), subjects suits concerning prison conditions brought under federal law to certain prerequisites.  Specifically, the PLRA dictates that a prisoner confined to any jail, prison, or correctional facility must exhaust all available administrative remedies prior to bringing any suit concerning prison life, be it in general or of a particular episode. See 42 U.S.C. § 1997e(a); Porter v. Nussle, 534 U.S. 516, 532 (2002).  Administrative remedies include all appellate remedies provided within the system. Fletcher v. Haase, No. Civ. 99-9549(GEL), 2002 WL 313799, at *1 (S.D.N.Y. Feb. 27, 2002).  There may be special circumstances, however, that render administrative remedies unavailable and the exhaustion requirement may be fulfilled by an inmate's reasonable belief that certain actions have sufficed fully to exhaust administrative remedies.  Abney v. McGinnis, 380 F.3d 663, 667 (2d Cir. 2004).

"The PLRA's exhaustion requirement is designed to 'afford[] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" Johnson v. Testman, 380 F.3d 691, 697 (2d Cir. 2004) (quoting Porter, 534 U.S. at

---

[7] Defendants concede that grievance CL-49757-04, which dealt with Mitchell's complaints about being housed with mentally ill inmates and his allegations of filthy and inhumane conditions, was properly exhausted.  See Defs. Mem. of Law at 7; see also Eagen Decl. (Docket No. 45) at Ex. C-1.

524-25). "'[A] grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought.'" <u>Johnson</u>, 380 F 3d. at 697 (quoting <u>Strong v. David</u>, 297 F.3d 646, 650 (7th Cir. 2002)). Inmates must provide sufficient information to "allow prison officials to take appropriate responsive measures." <u>Johnson</u>, 380 F.3d at 697.

DOCS has established a grievance process which includes a three-stage review and appeal. <u>See</u> N.Y. Correct. Law § 139 (McKinney 2003); N.Y. Comp. Codes R. & Regs. tit.7, § 701.1-.16 (2003).  When an inmate files a grievance, it is investigated and reviewed by an Inmate Grievance Resolution Committee (IGRC). If the grievance cannot be resolved informally, a hearing is held. The IGRC decision may be appealed to the Superintendent of the facility.  Finally, an inmate may appeal the Superintendent's decision to the Central Office Review Committee (CORC).  N.Y. Comp. Codes R. & Regs. tit.7, § 701.7(a) (2003).

### 1. CL-49853-04

Here, Mitchell reiterated the same complaints he made in grievance CL-49757-04, only adding a new claim about vermin infestation.  <u>See</u> Eagen Decl. at Ex. C-2; <u>see</u> <u>also</u> Eagen Decl. at Ex. C-1.  Defendants contend that Mitchell did not properly exhaust this grievance until twenty days after filing this action.  The grievance was filed on March 2, 2004 and was not denied by CORC until April 21, 2004.  This action was filed on April 1, 2004. docket No. 1.

Thus, the issues contained in this grievance were not properly exhausted before this action was commenced even though they became fully exhausted three weeks after the complaint was filed.  <u>Pettus v. McCoy</u>, No. 04-CV-471, 2006 WL 2639369, at *1 (N.D.N.Y.

Sept. 13, 2006) (McAvoy, J.) (dismissing an inmate's § 1983 claim without prejudice for failure to exhaust where inmate filed a grievance before commencing action but did not complete the grievance prcess until after the action had been commenced); see also Woodford v. Ngo, 126 S. Ct. 2378, 2386 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.").  It is recommended that defendants' motion on this ground be granted and that this claim be dismissed without prejudice.

### 2. CL-49925-04

This grievance was filed on March 15, 2004 alleging, inter alia, that the plastic wrap had been taken off his kosher meals outside his presence and he was denied boiling water to prepare his oatmeal in accordance with his kosher diet.  Eagen Decl. at Ex. C-3.  However, CORC did not deny Mitchell's appeal until May 19, 2004, over six weeks after the complaint was filed.  Id.  Thus, the issues contained in this grievance were not properly exhausted. See subsection (1) supra.  Therefore, it is recommended that defendants' motion on this ground be granted  and that this claim be dismissed without prejudice.

18

**3. CL-49935-04**

This grievance was filed on March 16, 2004 alleging, <u>inter alia</u>, that Mitchell suffered from an Achilles tendon problem and was denied special boots, a "flats order" that would house him in an area without steps, and pain medication to treat his condition.  Eagen Decl. at Ex. C-4.  However, CORC did not deny Mitchell's appeal until May 26, 2004, over seven weeks after the complaint was filed.  <u>Id.</u>  Thus, as with the grievances discussed above, the issues contained in this grievance were not properly exhausted.  Therefore, it is recommended that defendants' motion on this ground be granted and that this claim be dismissed without prejudice.

**4. CL-49999-04**

This grievance was filed on April 2, 2004 alleging, <u>inter alia</u>, that Clinton staff had mishandled some of his legal mail in retaliation for filing a lawsuit again the staff.  Eagen Decl. at Ex. C-5.  Mitchell also requested a transfer to a different facility.  <u>Id.</u>  However, CORC did not deny Mitchell's appeal until May 26, 2004, over seven weeks after the complaint was filed.  <u>Id.</u>  Thus, the issues contained in this grievance were not properly exhausted.  Therefore, it is recommended that defendants' motion on this ground be granted and that this claim be dismissed without prejudice.

19

### IV. Failure to Serve Defendants Doe and Corrigan

Mitchell's complaint asserts claims against John Doe # 1, a defendant who has neither been identified nor served with the complaint.  Rule 4(m) of the Federal Rules of Civil Procedure requires that service of process be effectuated within 120 days of the date of the filing of the complaint.  See also N.D.N.Y.L.R. 4.1(b).  Because this defendant has not been identified by Mitchell or served with process, it is recommended that the complaint be dismissed without prejudice as to this defendant.

As to defendant Corrigan, summonses for service of process upon him were issued on August 9, 2004 and October 19, 2005.  Docket Entries dated 8/9/04 & 10/19/05.  More than 120 days have passed since the summonses for Corrigan were reissued.  Accordingly, it is also recommended that the complaint be dismissed as to Corrigan without prejudice pursuant to Fed. R. Civ. P. 4(m) and N.D.N.Y.L.R. 4.1(b).


### V.  Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED** that:

1. Defendants' motion for summary judgment (Docket No. 45) be **GRANTED** as to all moving defendants for the first and second causes of action and that judgment be entered for those defendants on the first two causes of action;

2. Defendants' motion be **GRANTED** as to all moving defendants as to the third cause of action to the extent that the third cause of action be **DISMISSED** without prejudice

20

as to the moving defendants;

   3. The complaint be **DISMISSED** without prejudice as to defendants John Doe # 1 and Corrigan; and

   4. This action therefore be **TERMINATED** in its entirety as to all defendants and all claims.

  Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


DATED:  September 20, 2006
   Albany, New York

            _David R. Homer_
           United States Magistrate Judge